[No. 3113-2.  Division Two.  December 1, 1978.]

THE STATE OF WASHINGTON, *Respondent,* v. THOMAS
JOSEPH MATHES, *Appellant.*

*Mark S. Deming,* for appellant (appointed counsel for appeal).

*Don Herron, Prosecuting Attorney,* and *Joseph D. Mladinov, Senior Deputy,* for respondent.

SOULE, J.—Defendant was convicted by a jury of attempted burglary and possession of burglary tools. He appeals from an order deferring imposition of sentence.

The controlling issue in this case is whether a new trial is required because the deputy prosecuting attorney, acting in good faith but under a mistake of fact, questioned defendant concerning a purported prior conviction and its surrounding circumstances when in fact there was no prior conviction. We hold that the record requires a reversal despite the best efforts of the trial judge to give a curative instruction and despite the failure of defense counsel to move for a mistrial.

On June 3, 1977, defendant was shot while being apprehended by merchant patrolman Dennis Hoff. He had been observed apparently trying to break into an outside beer storage cooler at the Home Feed and Grocery Store. His defense was that he was not trying to break in but was just idling about while attempting to hitchhike home. After testifying in his own defense, he was cross–examined concerning a conviction purportedly occurring a short time before June 3 which resulted from a beer party involving a number of young people. Defendant stated that he was arrested only because he was riding with a friend who attempted to run over an officer and, upon being taken from the vehicle, he claimed that he was in the car only as a hitchhiker. On the stand, defendant admitted that he falsely claimed to be a hitchhiker on that occasion.

At the time of the cross–examination, both the deputy prosecuting attorney and the defense counsel honestly believed that there was such a prior conviction. During the noon recess, defense counsel, who had not represented defendant in the other matter, ascertained that the earlier charge had been dismissed so that there was no prior conviction and thus no basis for presenting the evidence. *State*

*v. Hill,* 83 Wn.2d 558, 520 P.2d 618 (1974); *State v. Dixon,* 17 Wn. App. 804, 565 P.2d 1207 (1977).

Upon being advised of the true state of facts, the trial court instructed the jury as follows:

Members of the jury: before I start reading you the formal instructions I want to report that this morning when the defendant was on the stand and he was interrogated about any prior convictions some testimony came in in reference to a party that he had been on and as a result of which some of them had been arrested and in effect he had; that was an answer to the effect of whether or not he had been convicted of a crime.

During the noon hour an investigation was carried on by counsel and it was found that the defendant was never convicted, that any charges against him were dismissed. So all of that testimony should be completely disregarded by the jury and in no manner should anything be considered as affecting the credibility of the defendant as a result of what the testimony was. It was an unfortunate thing that came in and it was understandable and nobody is to be blamed for it, for having had that information.

In our judgment, the result of the testimony was to create such prejudice that it could not be cured by any admonition of the trial judge. Beyond the subject of the purported conviction, the defendant was examined concerning his very similar statement on the prior occasion about his hitchhiking activity and its admitted falsity. That statement, but for the hook of the prior conviction, would have been irrelevant and thus inadmissible. The outcome of the present case depended almost entirely upon the jury's assessment of the relative credibility of the defendant and the witness Hoff. Under such circumstances, *State v. Dixon, supra* at 808, is particularly instructive:

Although it is presumed that juries follow the court's instructions, when the improperly admitted evidence is inherently prejudicial, a subsequent withdrawal of that evidence, coupled with an instruction to disregard it, cannot logically be said to remove the prejudicial impression created.

After a reading of the record, we cannot say that the error did not affect, or presumptively affect the final result of the trial. This record does not contain the strong independent evidence which can bring into play the "harmless error" rule. *Cf. State v. Martin,* 73 Wn.2d 616, 440 P.2d 429 (1968).

Neither is the defendant necessarily precluded from raising the issue because his counsel did not ask for a mistrial. In *State v. Suleski,* 67 Wn.2d 45, 406 P.2d 613 (1965), the issue was whether defense counsel had tacitly waived a prior motion for mistrial and thus failed to preserve the error. In granting a new trial the court said at page 50:

> The basic issue presented in this case is not whether defense counsel tacitly waived his objections or his motions for mistrial, or whether the trial court's instructions effectively struck the burglary tools charge, and its evidentiary derivatives, from the minds of the jury. Rather, the underlying issue is whether the defendant, under all of the circumstances, in fact received a fair and unbiased trial upon the charge which the trial court submitted to the jury.

(Citations omitted.)

In the case at bench, as in *Suleski,* there could be no "unringing of the bell" struck when the prejudicial and inadmissible evidence concerning the prior hitchhiking falsehood was placed before the jury. The good faith of the deputy prosecuting attorney does not lessen the prejudice. Before making the inquiry about the prior conviction, he should have been prepared to prove it by proper evidence. *Cf. State v. DeCuir,* 19 Wn. App. 130, 574 P.2d 397 (1978); *State v. Dixon, supra.* Had he attempted that preparation, he would have been alerted to the problem.

Because a new trial must be granted, it is unnecessary to consider in any depth the remaining assignments of error.

With respect to the weather reports taken at the Sea–Tac Airport which were offered to prove weather conditions at Home, approximately 20 airline miles to the southwest, such reports are admissible although their weight is affected by the distance between the point of

observation and the site of the controversy. *Peterson v. Arland,* 79 Wash. 679, 141 P. 63 (1914).

█ In the case before us, however, the records were apparently offered to impeach the witness Hoff, who, on cross–examination, described the weather as clear and warmish, not raining, whereas the defendant said that it was sprinkling off and on so that he had taken refuge in a telephone booth for a very brief time, perhaps only 2 minutes. For impeachment purposes, the records were inadmissible because offered to dispute a collateral matter. *State v. Putzell,* 40 Wn.2d 174, 242 P.2d 180 (1952); *State v. Harp,* 13 Wn. App. 273, 534 P.2d 846 (1975).

Further, even assuming that the distance from Home to the Sea–Tac Airport was not too great to allow discretion to the trial judge in ruling on admissibility, the error was harmless because a photograph in evidence taken on the night in question showed puddles and other evidence of recent rain.

Error is assigned to permitting the State to cross–examine defendant and extract from him on admission, that he told the arresting officer that he intended to take the beer under the bridge and drink it. This testimony directly contradicted his earlier testimony that he had no intention of entering the beer cooler but merely handled the lock out of curiosity.

The circumstance under which the statement to the officer was made appears to be that after the defendant was shot and being held, the arresting officer questioned him intensively without giving the required *Miranda* warnings. Defendant claims to have been frightened and upset at the time.

At a pretrial omnibus hearing, the presiding judge then ruled that the statements made under those circumstances would not be admissible on direct. The record before us does not disclose the basis for the ruling. Presumably, it was because of the lack of *Miranda* warnings. However, no written findings were made as to whether or not the hearing

judge thought that the statements were otherwise trustworthy.

A statement obtained without giving *Miranda* warnings may be used for impeachment purposes if the trustworthiness of the evidence otherwise satisfies legal standards. *Harris v. New York,* 401 U.S. 222, 28 L. Ed. 2d 1, 91 S. Ct. 643 (1971); *State v. Davis,* 82 Wn.2d 790, 514 P.2d 149 (1973).

Since the trial and the writing of the appellant's brief, the decision of *State v. Setzer,* 20 Wn. App. 46, 579 P.2d 957, *review denied,* 90 Wn.2d 1025 (1978), has addressed the matter of the State's burden of proving that a confession is trustworthy and voluntary even when offered for impeachment purposes. The partial record before us raises doubts as to whether or not the statements are sufficiently trustworthy to warrant their admission, but not having had the benefit of seeing and hearing the witness, we think the matter should be resolved initially by the trial court. Upon retrial, the trustworthiness of the statement should be determined by the trial judge before it is offered to the jury. *Cf. State v. Joseph,* 10 Wn. App. 827, 520 P.2d 635 (1974); *Wold v. State,* 57 Wis. 2d 344, 204 N.W.2d 482 (1973).

The judgment is reversed and the cause is remanded for a new trial.

PEARSON, C.J., and PETRIE, J., concur.