[No. 16582-5-III. Division Three. May 28, 1998.]

THE STATE OF WASHINGTON, *Respondent*, v. DOUGLAS B. WILLIAMS, *Appellant*.

Paul J. Wasson II, for appellant.

James R. Sweetser, Prosecuting Attorney, and Kevin M. Korsmo, Deputy, for respondent.

KATO, J. — Douglas B. Williams was convicted of delivery of cocaine. Contending the court committed reversible error by failing to inform him of his CrR 3.5(b) rights at a pretrial suppression hearing, he appeals. We reverse and remand for a new trial.

Mr. Williams was charged with one count of delivery of a controlled substance, arising from a confidential informant's controlled buy of crack cocaine from him. The court held a pretrial suppression hearing to determine the admissibility of certain statements made by Mr. Williams at the time of his arrest. The only witness was Detective Mark Burbridge, who testified that he arrested Mr. Williams and read him his constitutional rights. Upon questioning by the detective, Mr. Williams stated he had never sold crack cocaine and did not know anything about the drug business. The court did not advise Mr. Williams of his right to testify as to the circumstances surrounding the statements nor was he advised he could testify at the suppression hear-

ing without waiving his right to remain silent at trial as required by CrR 3.5(b).[1] Finding Mr. Williams voluntarily waived his constitutional rights, the court determined the statements were admissible.

At trial, Mr. Williams testified he neither sold drugs nor told the detective he knew nothing about the drug business. The jury found him guilty as charged. He appeals.

The dispositive issue is whether the failure of the trial court to advise Mr. Williams of his CrR 3.5(b) rights at the suppression hearing constitutes reversible error. Since he did not object below, however, we must determine if the issue can be raised for the first time on appeal.

In *State v. Alexander*, 55 Wn. App. 102, 105, 776 P.2d 984, *review denied*, 110 Wn.2d 1039 (1988), this court held that the failure to comply with CrR 3.5(b) was error of constitutional magnitude which could be raised for the first time on appeal. We thus consider the issue.

The voluntariness of a confession depends upon the totality of the circumstances. *State v. Rupe*, 101 Wn.2d 664, 679, 683 P.2d 571 (1984), *cert. denied*, 486 U.S. 1061 (1988). The Fifth Amendment privilege against self-incrimination precludes the use of a defendant's statement unless the privilege was knowingly and intelligently waived following the giving of *Miranda* warnings. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3D 974 (1966).

After the suppression hearing, the court admitted Mr. Williams' statements upon finding he had voluntarily waived his constitutional rights. But its decision was based on the testimony of Detective Burbridge alone. The court's

---

[1]CrR 3.5(b) provides:

"It shall be the duty of the court to inform the defendant that: (1) he may, but need not, testify at the hearing on the circumstances surrounding the statement; (2) if he does testify at the hearing, he will be subject to cross examination with respect to the circumstances surrounding the statement and with respect to his credibility; (3) if he does testify at the hearing, he does not by so testifying waive his right to remain silent during the trial; and (4) if he does testify at the hearing, neither this fact nor his testimony at the hearing shall be mentioned to the jury unless he testifies concerning the statement at trial."

failure to advise Mr. Williams of his CrR 3.5(b) right to testify as to the voluntariness of his statements without waiving his Fifth Amendment privilege deprived him of the opportunity to make a learned decision as to whether he should testify at the suppression hearing:

In order to have full knowledge of the facts and circumstances surrounding a statement, it is necessary that the defendant be allowed to testify in his own behalf. Here, the court made its decision to admit this statement based only on the officer's version of the facts, without permitting the defendant the opportunity to testify or present other evidence, if any. We conclude the court erred, because it failed to comply with CrR 3.5(b). The error is of constitutional magnitude.

This issue is dispositive . . . .

*Alexander*, 55 Wn. App. at 105 (citation omitted). The court erred by not advising Mr. Williams of his CrR 3.5(b) rights.

 Because Mr. Williams' statements were seemingly exculpatory, the State argues the error was harmless. But the admission of an involuntary statement cannot constitute harmless error. *State v. Ng*, 110 Wn.2d 32, 37, 750 P.2d 632 (1988). The only issue before the trial court at the CrR 3.5 hearing was the voluntariness of Mr. Williams' statements.[2] The error requires automatic reversal. *See State v. Guloy*, 104 Wn.2d 412, 431-32, 705 P.2d 1182 (1985) (Brachtenbach, J., concurring), *cert. denied*, 475 U.S. 1020 (1986); *Mincey v. Arizona*, 437 U.S. 385, 398, 98 S. Ct. 2408, 57 L. Ed. 2d 290 (1978).

Reversed and remanded for a new trial.

SCHULTHEIS, C.J., concurs.

BROWN, J. (dissenting) — Douglas B. Williams contends

---

[2]In *State v. Summers*, 52 Wn. App. 767, 764 P.2d 250 (1988), *review denied*, 112 Wn.2d 1006 (1989), the court held that the failure to inform the defendant of his CrR 3.5(b) rights did not require remand because the sole basis for the defendant's challenge to the admissibility of his statement was the taint stemming from the prior search of his room. Unlike *Summers*, Mr. Williams' only challenge to admissibility of his statements was whether they were made after a voluntary waiver of his constitutional rights.

for the first time on appeal that the trial court erred by failing to advise him of his CrR 3.5 rights. He does not argue his statements were involuntary or otherwise tainted. At his CrR 3.5 hearing he was offered the opportunity to testify and present evidence, but declined. I would not consider his assignment of error because he did not raise it in the trial court and it is neither manifest nor of constitutional magnitude. Further, even if he had properly raised this assignment of error, I would affirm because (1) there is no genuine issue of voluntariness or other taint; (2) the trial court's findings supporting voluntariness are verities for this appeal; and (3) the error is harmless beyond a reasonable doubt. Therefore, I respectfully dissent.

## PERTINENT FACTS

When questioned by the arresting officer, Detective Mark Burbridge, Mr. Williams "denied ever having sold crack cocaine or knowing anything about the drug business." At trial, Mr. Williams disputed saying that he did not know anything about the drug business, but otherwise testified consistently with his exculpatory statement. Prior to trial, the court held a CrR 3.5 hearing to determine the admissibility of Mr. Williams' statements. The court offered Mr. Williams an opportunity to testify at the CrR 3.5 hearing, but did not specifically inform him of the full CrR 3.5(b) advisement. Mr. Williams, through counsel, declined to testify or offer other evidence at the CrR 3.5 hearing in response to the court's inquiry. No objection was made at any time prior to this appeal to the omission of the specific advisement or the court's manner of conducting the hearing, or to the court's findings at the conclusion of the CrR 3.5 hearing.

## ANALYSIS

A. Failure to Object Precludes Review. Mr. Williams contends the failure to advise according to CrR 3.5(b) is a manifest error affecting a constitutional right. RAP 2.5(a)(3). The State contends review is precluded by Mr. Williams' failure to object below. RAP 2.5(a).

The proper way to approach claims of constitutional error asserted for the first time on appeal is as follows. First, the appellate court should satisfy itself that the error is truly of constitutional magnitude—that is what is meant by "manifest". If the asserted error is not a constitutional error, the court may refuse review on that ground. If the claim is constitutional, then the court should examine the effect the error had on the defendant's trial according to the harmless error standard . . .

*State v. Scott*, 110 Wn.2d 682, 688, 757 P.2d 492 (1988) (footnote omitted).

CrR 3.5(b) states in part: "It shall be the duty of the court to inform the defendant that: (1) he may, but need not, testify at the hearing on the circumstances surrounding the statement." What does "shall" mean in CrR 3.5(b)? The rules of statutory construction apply to interpretation of court rules. *State v. McIntyre*, 92 Wn.2d 620, 622, 600 P.2d 1009 (1979). Normally, "shall" is presumptively mandatory and imperative. *State v. Krall*, 125 Wn.2d 146, 148, 881 P.2d 1040 (1994). However, if a statute is intended to guide orderly procedure, not limit power, "it will be construed as directory only" and is permissive as compared to imperative. *Niichel v. Lancaster*, 97 Wn.2d 620, 624, 647 P.2d 1021 (1982). CrR 3.5(b) is intended to guide the trial court's procedure in safeguarding the Fifth Amendment rights of defendants; it does not limit the powers of a trial court to take other measures when deemed necessary to assure understanding. Therefore, the language of CrR 3.5(b) is permissive and directory, not imperative and mandatory. Thus, CrR 3.5(b) does not create a new constitutional right for Mr. Williams; it merely guides the court's procedure in assuring the protection of an existing substantive right. "Pretrial hearings are but mechanical devices designed to effectuate substantive rights and remedies." *State v. Taylor*, 30 Wn. App. 89, 93, 632 P.2d 892, *review denied*, 96 Wn.2d 1012 (1981).

Mr. Williams has persuaded the majority to rely on *State v. Alexander*, 55 Wn. App. 102, 776 P.2d 984, *review denied*,

110 Wn.2d 1039 (1988), for the proposition the failure here to comply with CrR 3.5(b) is of constitutional magnitude. In *Alexander*, a distinguishable juvenile case, *no* opportunity was extended to Mr. Alexander to testify on the CrR 3.5 issues and he *did not* testify at the trial. Here, Mr. Williams was given the opportunity to testify on the legal admissibility of his statement before trial and later did testify regarding the statement at trial.

Further, the *Alexander* court relies on another juvenile case, *State v. Tim S.*, 41 Wn. App. 60, 701 P.2d 1120 (1985), where it was conceded no *Miranda* warnings were given (*Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694, 10 A.L.R.3D 974 (1966)) or waiver received from Tim S. and the statement was understood to be inadmissible in the State's case in chief. No CrR 3.5 hearing of any form was conducted in *Tim S.* because the statement was admitted only for the limited purpose of impeachment. However, the appellate court determined the juvenile court erroneously relied on the statement as substantive evidence in support of conviction rather than the exclusive purpose of impeachment. Thus, these cases are inapposite as authority here, where a pretrial CrR 3.5 hearing was conducted without objection to either the court's procedure or findings that the evidence was admissible in the State's case in chief. Additionally, Mr. Williams was given the pretrial opportunity to present testimony. Because no genuine issue exists that Mr. Williams' statement met the constitutionally required tests for voluntariness, the error does not rise to substantive constitutional proportions.

Moreover, for the reasons just discussed, *Alexander* should not be read as holding that an omission of the CrR 3.5(b) advisement is per se error of constitutional magnitude requiring reversal. Additional reasons support this conclusion. First, because as pointed out below in the discussion of harmless error, an independent review of the record is, nevertheless, the appellate procedure required when the entire CrR 3.5 procedure has been omitted. *State v. Vandiver*, 21 Wn. App. 269, 272-73, 584 P.2d 978 (1978), *review denied*, 91 Wn.2d 1011 (1979). Here we are dealing

with the failure to follow only part of the directed procedure. Second, and also discussed below, when a CrR 3.5 hearing has been conducted and no challenge exists to trial court findings underlying the constitutionally required tests, they now become verities on appeal supporting the legal admissibility of the statement. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997).

In summary, the State correctly argues *Taylor* stands for the proposition the CrR 3.5 hearing is a *procedure* designed to protect the substantive constitutional rights of the defendant. *Taylor*, 30 Wn. App. at 92. *Taylor* is cited with approval in *Tim S.*, 41 Wn. App. 60, a case wrongly relied upon by Mr. Williams because here the core tests of due process coercion and warnings/waiver have been satisfied. The real question before us is whether Mr. Williams' substantive constitutional right was violated, not whether the exact procedural niceties directed under CrR 3.5(b) have been followed. To follow a contrary rule of precedence elevates form over substance. The procedure is not the end to be achieved, but merely an additional means for assuring substantive due process.

The trial court's failure to advise Mr. Williams of all the provisions of CrR 3.5(b) is, therefore, not a per se manifest error affecting his constitutional right. Thus, review should not be granted to Mr. Williams for this claim of error raised for the first time in this appeal because the error did not manifestly affect his constitutional right. RAP 2.5(a)(3); *Scott*, 110 Wn.2d at 688.

B. Any Error is Harmless Error. Even if Mr. Williams was not precluded from raising this issue for the first time on appeal, his claim is without merit, because, under the second prong of the *Scott* analysis, it is harmless.

The standards for review are well established. "Where nonconstitutional harmless error occurs in admitting evidence, reversal is not required unless there is a reasonable probability that it affected the verdict." *State v. Hamlet*, 133 Wn.2d 314, 327, 944 P.2d 1026 (1997). "The stricter standard for constitutional error requires that it be harm-

less beyond a reasonable doubt." *State v. Hopson*, 113 Wn.2d 273, 284, 778 P.2d 1014 (1989); *see also Hamlet*, 133 Wn.2d at 327. "In a harmless error case, two inquiries are made: First, was there an error of law implicating a constitutional or nonconstitutional right? Second, was the error prejudicial?" *State v. Weber*, 99 Wn.2d 158, 163, 659 P.2d 1102 (1983). The following discussion assumes an error implicating the right to be free from self-incrimination.

There is a reasonable probability the error did not affect this verdict because Mr. Williams testified at trial consistently with his exculpatory statement leaving the jury to sort out any factual disparities between any perceived differences in the factual recitations of what was said. Matters of credibility and weight were properly left to the jury. Even if a constitutional right is implicated, there is no reasonable doubt that the error did not prejudice Mr. Williams. There is a wealth of incriminating evidence in this record apart from any statement of Mr. Williams. Indeed, Mr. Williams testified consistently with the exculpatory portion of his statement and disputes only a minor point relating to whether he had prior knowledge of the drug business, a point possibly bearing on credibility and weight, but not legal admissibility. The former matters are resolved by the jury, the latter by the court.

Significantly, Mr. Williams does not challenge the trial court's findings and conclusions his statement met the due process coercion test and the *Miranda* warnings/waiver test. *Miranda v. Arizona*, 384 U.S. 436, 86 S. Ct. 1602,16 L. Ed. 2d 694, 10 A.L.R.3d 974 (1966); *State v. Reuben*, 62 Wn. App. 620, 626-27, 814 P.2d 1177, *review denied*, 118 Wn.2d 1006 (1991). Because these findings are unchallenged, they are verities on appeal. *Broadaway*, 133 Wn.2d 118. Furthermore, it is not surprising that Mr. Williams does not challenge the trial court findings because the record contains ample evidence to support each critical finding.

Mr. Williams argues incorrectly he has been deprived of *the* opportunity to dispute his statements were voluntary.

Statement voluntariness is first decided to determine legal admissibility before trial at a CrR 3.5 hearing; however, at trial, the jury again considers the question when deciding what, if any, weight it should be given. *State v. Benn*, 120 Wn.2d 631, 657, 845 P.2d 289, *cert. denied*, 510 U.S. 944 (1993).

CrR 3.5 details the procedure for a hearing on the admissibility of statements made by the accused. The rule implements the Supreme Court decision in *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908, 1 A.L.R.3D 1205 (1964), which articulated the constitutional requirement that the defendant be afforded a pretrial hearing on the voluntariness of his or her confession. *See State v. Wolfer*, 39 Wn. App. 287, 291-92, 693 P.2d 154 (1984), *review denied*, 103 Wn.2d 1028 (1985). The *Miranda* warnings/waiver test was added in 1966 to the existing due process coercion test as the basic standards for passing constitutional muster. The trial court in unchallenged findings found the basic constitutional tests satisfied. CrR 3.5(b) adds additional directory and permissive guidance relating to the means used to assure the constitutional requirements.

Even the complete failure to hold a CrR 3.5 hearing, however, does not automatically require reversal; a genuine issue of voluntariness must be shown before such relief will be granted. *State v. Vandiver*, 21 Wn. App. 269, 272-73. Here no genuine issue of voluntariness exists. It follows that no prejudice can be shown and that the error is harmless beyond a reasonable doubt.

The total absence of a voluntariness hearing is a manifest error within the meaning of RAP 2.5(a)(3) permitting review for the first time on appeal. The omission of the CrR 3.5(b) advisement does not, however, mean Mr. Williams was per se denied substantive due process amounting to reversible constitutional error. Under *Vandiver* an independent review of the record must be conducted and if the review reveals no substantive denial of the defendant's

Fifth Amendment right, then there is no reversible error. Whether a substantive denial has occurred is determined by application of the due process coercion test and the warnings/waiver test. Here, we need not conduct an independent review of the record because the trial court's findings on those issues are verities under *Broadaway*. Accordingly, there cannot be reversible error here.

Mr. Williams' argument, advanced by the majority, has been rejected in *State v. Summers*, 52 Wn. App. 767, 764 P.2d 250 (1988), *review denied*, 112 Wn.2d 1006 (1989). Division One affirmed a second-degree burglary conviction despite the trial court's failure to inform Summers of his rights under CrR 3.5(b).

> Summers also contends that the trial court's failure to inform him of his rights as required by CrR 3.5(b) requires that the case be remanded for a new hearing on the admissibility of his statement. However, the sole basis for Summers' challenge to the admissibility of his statement is the alleged taint stemming from the prior search of his room. Since, as we have concluded, there was no taint, there was no basis for suppressing Summers' statement and hence no prejudice in the trial court's failure to comply with CrR 3.5(b).

*Summers*, 52 Wn. App. at 774 (citations omitted). Further, the *Summers* court noted, even if the search had been unlawful, the lack of a CrR 3.5 hearing would not require reversal because, as here, there was no issue as to the voluntariness of the statement.

> We note, moreover, that there is no issue as to the voluntariness of Summers' statement. CrR 3.5 was enacted to implement the constitutional requirement of [citation omitted] which held that a defendant must be afforded a hearing on the voluntariness of his confession prior to its admission at trial. *However, failure to hold a 3.5 hearing does not require reversal if there is no genuine issue as to voluntariness.* Thus, even if there were an issue in this case as to whether or not the statement was tainted by a prior unlawful search, Summers would not have been prejudiced by the absence of a 3.5 hearing, and a fortiori would not have been prejudiced by the court's failure to comply with the requirements of CrR 3.5(b).

*Summers*, 52 Wn. App. at 774, n.7 (citations omitted, emphasis added). The court's analysis in *Summers* applies here. There is no genuine issue as to the voluntariness of Mr. Williams' statements because (1) the trial court's findings are verities under *Broadaway*, 133 Wn.2d at 133, and (2), Mr. Williams does not claim they are involuntary or otherwise legally tainted. His sole complaint about his voluntary statement is that Detective Burbridge incorrectly recited part of it. Remarkably, Mr. Williams at trial merely denied that he denied knowledge of the drug business as recited by Detective Burbridge and took the strange tack of admitting he did have prior knowledge of the drug business, perhaps in an attempt to avoid any impeachment value. These matters of fact, credibility, and weight are for the jury to resolve. Under these circumstances it is impossible for Mr. Williams to show prejudice (or fairly complain of failed trial tactics). Accordingly, I believe there is no reversible error. *Summers* is well reasoned and we should not depart from that court's reasoning and create a split between the divisions of our court.

Besides, the challenged statements are merely exculpatory in nature and consistent with Mr. Williams' defense at trial. The jury weighed Detective Burbridge's testimony at trial against that of Mr. Williams so, contrary to Mr. Williams' argument, he did have the critical opportunity to dispute the statements where it counts most, in front of the jury. *Benn*, 120 Wn.2d at 662.

## CONCLUSION

When there is a complete absence of a CrR 3.5 hearing and consequently no findings, an appellate court should conduct an independent review of the record to determine whether the critical tests for voluntariness are satisfied. Illustrative cases from all three divisions and the Supreme Court are collected below.[3] It follows that when there is an omission of just part of a CrR 3.5 hearing, an independent

---

[3]*See State v. Broadaway*, 133 Wn.2d 118, 129-135, 942 P.2d 363 (1997); *State v. Williams*, 34 Wn. App. 662, 673-74, 663 P.2d 1368 (1983) (Division One) (no 3.5

review of the record should also be accomplished. However, when, as here, the critical voluntariness tests are satisfied as verities for appeal, no need exists for an independent review of the record and, accordingly, no prejudice or reversible error can result.

In conclusion, Mr. Williams' claim of error should be precluded by the application of RAP 2.5(a). Because Mr. Williams does not claim his statement is involuntary and does not claim any other taint, his appeal is without merit. Further, the trial court's findings relating to the voluntariness tests are verities for this appeal, thus, he has no legitimate constitutional complaint or claim of reversible error. Mr. Williams, after opportunity, chose not to testify or present evidence at the CrR 3.5 hearing. Mr. Williams then testified consistently at trial with his alleged exculpatory statement and testified to an inconsistency in a collateral matter, a matter for the jury to resolve. Thus, his claim of error actually goes to the weight to be given the inconsistent statement, not its legal admissibility. The evidence against him is overwhelming. He shows no prejudice. The failure of the trial court to give Mr. Williams the CrR 3.5(b) advisement is, therefore, harmless error, even when using the higher beyond a reasonable doubt standard.

I would affirm.

Review granted at 136 Wn.2d 1030 (1998).

hearing at all, no objection, harmless error, reversed on other grounds); *State v. Renfro*, 28 Wn. App. 248, 251, 622 P.2d 1295 (1981), *aff'd*, 96 Wn.2d 902, 639 P.2d 737, *cert. denied*, 459 U.S. 842, 103 S. Ct. 94, 74 L. Ed. 2d 86 (1982) (without comment, agreed no error in Division Two's no hearing, harmless error holding ); *State v. McKeown*, 23 Wn. App. 582, 596 P.2d 1100 (1979) (no 3.5 hearing, harmless error); *State v. Mustain*, 21 Wn. App. 39, 42-43, 584 P.2d 405 (1978) (Division Two) (no 3.5 hearing, harmless error); *State v. Darnell*, 8 Wn. App. 627, 630, 508 P.2d 613, *cert. denied*, 414 U.S. 1112 (1973) (Division Three, no objection, independent review of record, harmless error).